# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

James and Sally Bailly,

   Plaintiffs,

           Civ. No. 06-4925 (RHK/AJB)
           **MEMORANDUM OPINION
           AND ORDER**

v.

Michael and Annette Thompson,[1]

   Defendants and Third-Party Plaintiffs,

v.

Michael and Heather Larson,

   Third-Party Defendants.

Francis M. Doherty, Roger L. Imes, Craig R. Steger, Hale, Skemp, Hanson, Skemp & Sleik, La Crosse, Wisconsin, for Plaintiffs.

Paul J. Wocken, Willenbring, Dahl, Wocken & Zimmermann, PLLC, Cold Spring, Minnesota, for Defendants/Third-Party Plaintiffs.

Michael L. Lander, Michael L. Lander, P.A., Minneapolis, Minnesota, for Third-Party Defendants.

## BACKGROUND

   The relevant facts in this case are not in dispute and, accordingly, are recited

without citation to the record.  This case arises from a negligence action – and it all

---

[1] The parties stipulated to the dismissal of Defendant/Third-Party Plaintiff Michael Thompson. (Doc. No. 37.)

started with a horse named Baby Doll.  In 2004, Defendant Annette Thompson agreed to allow Third-Party Defendants Michael and Heather Larson to board, train, and ride horses on her property.  In return, the Larsons agreed to help with the upkeep of the fences and the barn.  Thompson also allowed Plaintiffs James and Sally Bailly to board and ride their horse on her property.

On June 11, 2005, Thompson purchased Baby Doll at an auction and the horse was delivered to her home the following day.  Because Thompson did not receive any health records with the purchase of Baby Doll, she quarantined the horse in her barn until a veterinarian could confirm that it was healthy enough to be around other horses.  But Baby Doll escaped from its stall and ran to the enclosed field near the barn.  Sally Bailly, who was on the property when Baby Doll escaped, secured her horse in its own stall so that it could not come into contact with Baby Doll.  She did not offer to help Thompson, but observed that Baby Doll appeared to be nervous and resistant to Thompson's efforts to put it back into its stall.  Indeed, Thompson was unable to secure Baby Doll before nightfall.  But she closed the gate so that Baby Doll could not enter the pasture with the other horses.  She also placed water in a 30 gallon container in the pasture where the other horses were located.  Thompson then informed the Larsons and the Baillys that she would resume her efforts in the morning.

The Larsons, however, were worried that Baby Doll would come into contact with the other horses and possibly transmit a disease.  As such, they decided to embark on their own mission – capture Baby Doll and return it to the barn.  The Baillys offered to

2

help the Larsons.  So in the pitch black of night – armed with flash lights and a lasso – the Larsons and the Baillys entered Thompson's property and went in search of Baby Doll.  Thompson was unaware they had entered her property that evening.

Baby Doll proved to be a difficult foe – each time the Larsons and the Baillys encountered the skittish horse, it would run away.  Eventually, Mike Larson was able to get his lasso around Baby Doll, but he lost his grip on the rope and Baby Doll began running away.  Seconds later, Baby Doll knocked James Bailly over and he was seriously injured.

The Baillys then brought this action, alleging negligence on the part of Thompson for allowing Baby Doll to escape from the barn.[2]  Thompson denies liability and brought a third-party action against Michael and Heather Larson, claiming that their negligence caused the injuries alleged in the Baillys' Complaint.  (See Third-Party Complaint ¶¶ 6-7.)  Thompson has now moved for summary judgment.  For the reasons set forth below, the Court will grant her Motion.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett,

---

[2] The Baillys also alleged in their Complaint that Thompson violated Minnesota's running-at-large statute.  See Minn. Stat. § 346.16. (providing that "it shall be unlawful for any owner or any person having the control of [a horse] to permit the same to run at large in the state").  The Baillys, however, have abandoned this claim.  (See Pl.'s Opp'n Mem. at 10.)

477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that the

material facts in the case are undisputed.  Celotex, 477 U.S. at 322; Mems v. City of St.

Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000).  The Court must

view the evidence, and the inferences that may be reasonably drawn from it, in the light

most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229

F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116

(8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but

must show through the presentation of admissible evidence that specific facts exist

creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256

(1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

Because this case is a diversity action, the Court must apply Minnesota substantive

law.  Gylten v. Swalboski, 246 F.3d 1139, 1141 (8th Cir. 2001).  "In Minnesota, to

prevail on a claim for negligence, a plaintiff must prove the following: (1) that the

defendant has a legal duty to the plaintiff to take some action; (2) that there was a breach

of that duty; (3) that the breach of that duty was the proximate cause of the harm to the

plaintiff; and (4) damage."  Id. (citing Gilbertson v. Leininger, 599 N.W.2d 127, 130

(Minn. 1999)).

In support of her Motion, Thompson argues that James Bailly primarily assumed the risk of injury and therefore there is no liability here.[3]

The Minnesota Supreme Court has ruled that "[b]efore a court considers assumption of risk, it should first determine whether the defendant owed a duty to the plaintiff" because "[i]f no duty exists there is no need to determine whether a person assumed the risk thus relieving the defendant of the duty." Baber v. Dill, 531 N.W.2d 493, 495 (Minn. 1995); accord Louis v. Louis, 636 N.W.2d 314, 318 (Minn. 2001) ("Any legal analysis of an action brought against a landowner alleging negligence must begin with an inquiry into whether the landowner owed the entrant a duty."). Thus, the essential question in this case is: what legal duty, if any, did Thompson owe the Baillys? If there is no duty, the Baillys' negligence claim must fail.

Under Minnesota law, landowners owe entrants a duty of reasonable care. Louis, 636 N.W.2d at 318-19. But, this duty is not absolute because "[a] [landowner] is not liable to [entrants] for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the [landowner] should anticipate the harm despite such knowledge or obviousness." Baber, 531 N.W.2d at 495-96 (quoting Restatement (Second) of Torts § 343A (1965)). Notably, the Minnesota Supreme Court added the caveat that the landowner has no duty to an entrant "where the

---

[3] Thompson also argues that Minnesota's recreational-use-immunity statute precludes liability, see Minn. Stat. §§ 604A.20-23 (providing that an owner who directly or indirectly offers land for recreational use without charge is not liable to any person who uses the property), and that the doctrine of superseding cause insulates her from liability. For the reasons explained below, the Court need not address these arguments because Thompson did not owe a duty of care to the Baillys; consequently, the Baillys' negligence claim fails as a matter of law.

anticipated harm involves dangers *so obvious* that no warning is necessary."  <u>Baber</u>, 531
N.W.2d at 496 (emphasis added).

Thompson asserts that she "did not owe James Bailly a duty of care . . . because he
knew that the horse was potentially dangerous to approach [and] [t]he risk of doing so as
open and obvious."  (Def.'s Reply Mem. at 4-5.)  The Court agrees.  "[T]he word
'known' denotes not only knowledge of the existence of the condition or activity itself,
but also appreciation of the danger it involves."  <u>Louis</u>, 636 N.W.2d at 321 (citation
omitted).  A danger is "obvious" if a reasonable person exercising ordinary perception,
intelligence, and judgment would recognize the danger.  <u>Id.</u>  And "the test for what
constitutes an 'obvious' danger is an objective test:  the question is not whether the
injured party actually saw the danger, but whether it was in fact visible."  <u>Id.</u> (citation
omitted).

Here, there is no dispute that James Bailly saw Baby Doll running around; he
knew that the horse was frightened and unpredictable such that it could cause injury to
those around it.  (J. Bailly Dep. at 69, 198-99, 207.)  Furthermore, the danger of trying to
capture a "wild horse" in the middle of the night (or during the day) should be obvious to
a reasonable person.  Indeed, James Bailly testified that he had experience with horses
and was concerned that the skittish horse could injure someone.  (<u>Id.</u> at 198-99.)
Accordingly, the Court concludes that the danger of attempting to capture a wild horse in
the middle of the night was known and obvious.

But the Court must also address whether the dangerous condition here was "so obvious" as to preclude application of the "unless" clause of Section 343A. <u>See</u> <u>Baber</u>, 531 N.W.2d at 496. The Court determines that it was. As the Minnesota Supreme Court acknowledged in <u>Baber</u>, "[t]he difference between open and obvious dangerous activities and conditions for which the possessor should anticipate harm and those activities and conditions for which the possessor should not anticipate harm because they are so open and obvious is a fine one, but one that we choose to make." <u>Id.</u> The record in this case conclusively establishes that the danger involved here – attempting to capture a wild horse in the middle of the night – is such an obvious danger that no warning is necessary. Indeed, "'no one needs notice of what he knows or reasonably may be expected to know.'" <u>Id.</u> at 496 (quoting <u>Sowles v. Urschel Lab., Inc.</u>, 595 F.2d 1361, 1365 (8th Cir. 1979)); <u>see also</u> <u>Peterson v. W.T. Rawleigh Co.</u>, 144 N.W.2d 555, 558 (Minn. 1966) (recognizing that certain situations are so obviously dangerous that the landowner has no duty to warn of them).

Even if the Court were to apply Section 343A's "unless" clause, there is no evidence that Thompson should have anticipated that the Baillys would attempt to capture a wild horse in the middle of the night. The record shows that the other horses were segregated from Baby Doll and had plenty of water. Thompson advised the Baillys of the situation; in fact, they knew that Baby Doll was skittish and unpredictable. The Minnesota Supreme Court has explained that "[a] reason to anticipate the harm may arise when the landowner 'has reason to expect that the invitee will proceed to encounter the

known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.'" Sutherland v. Barton, 570 N.W.2d 1, 7 (Minn. 1997) (citation omitted).  In the Court's view, this was not a situation in which a reasonable jury could conclude that the advantages of encountering the danger outweighed the apparent risk.  Notably, the Baillys testified that they were not concerned that Baby Doll would come into contact with their horse.  (S. Bailly Dep. at 134; J. Bailly Dep. at 103, 106.)  And even if they were concerned, they had alternatives – they could have moved their horse to their own property where they had their own facilities for housing horses or they could have waited until morning, when it would have been easier to see – to assist Thompson in her efforts to return Baby Doll to the barn.  (Id. at 21, 101-02.)  Thompson simply had no reason to anticipate that the Baillys would proceed to encounter the obvious danger; accordingly, Thompson had no duty to protect the Baillys from this common-sense danger.

Because the Court has determined that Thompson owed James Bailly no duty of care, it need not determine whether he assumed the risk of injury when he attempted to capture a wild horse in the middle of the night.  Baber, 531 N.W.2d at 495 (stating that "[i]f no duty exists there is no need to determine whether a person assumed the risk").[4] Therefore, the Court finds that the Baillys' negligence claim fails as a matter of law.

---

[4] Were the Court to consider the issue, it would determine that James Bailly assumed the risk of injury when he attempted to capture Baby Doll.  Minnesota law recognizes two types of assumption of risk: primary assumption of risk and secondary assumption of risk.  Swagger v. City of Crystal, 379 N.W.2d 183, 184 (Minn. Ct. App. 1985).  Primary assumption of risk bars recovery in a negligence action if the plaintiff: (1) has knowledge of the risk, (2) appreciates the

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Thompson's Motion for Summary Judgment (Doc. No.18) is **GRANTED**; her Third-Party Complaint (Doc. No. 4) is **MOOT**; and the Baillys' Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date:  May  27, 2008

s/ Richard H. Kyle
RICHARD H. KYLE
United States District Judge

---

risk, and (3) has a choice to avoid the risk but voluntarily chooses to accept the risk.  <u>Reimer v. City of Crookston</u>, 326 F.3d 957, 966 (8th Cir. 2003) (applying Minnesota law).  By contrast, secondary assumption of risk is a form of contributory negligence.  <u>Swagger</u>, 379 N.W.2d at 184. At issue here is primary assumption of risk.  "This doctrine generally applies to cases that involve inherently risky activities…."  <u>Kraft v. Ingersoll-Rand Co., Inc.</u>, 136 F.3d 584, 586 (8th Cir. 1998) (applying Minnesota law).  The Court is of the view that attempting to capture a wild horse is an inherently risky activity.  There is no dispute that James Bailly knew, appreciated, and voluntarily assumed the risk of injury when he volunteered to help the Larsons capture a wild horse in the middle of the night.  Consequently, the Baillys' negligence claim must fail.